IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

ANDREW RAKOWSKY, Individually    )
and on behalf of all others      )
similarly situated,              )
                                 )
     Plaintiff,                  )
                                 )
v.                               )    No. 23-cv-02340-TLP-tmp
                                 )
FEDERAL EXPRESS CORPORATION,     )
                                 )
     Defendant.                  )

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
CORRECT OR AMEND PLAINTIFF'S PRENOTICE COMMUNICATIONS TO
PUTATIVE COLLECTIVE MEMBERS

_____

Before the court is a Motion to Correct or Amend Plaintiff's Prenotice Communications to Putative Collective Members filed by Federal Express Corporation ("FedEx") on June 29, 2023. (ECF No. 13.) The plaintiff, Andrew Rakowsky, filed his response on July 14, 2023. (ECF No. 23.) For the reasons below, the defendant's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

On May 26, 2023, Andrew Rakowsky filed this putative collective action. (ECF No. 1.) Rakowsky alleges that FedEx violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to provide overtime pay. (ECF No. 1.) Rakowsky asserts this claim on his own behalf and on behalf of similarly

situated individuals "who are or have been employed by Defendant as a Security Specialist (II, III, or Senior), or in other job titles performing similar duties anywhere in the United States (except in Pennsylvania) during the applicable statutory period." (Id.) He also alleges that FedEx violated New York Labor Law, Article 19 §§ 650, *et seq.*, and the supporting New York State Department of Labor regulations, and seeks to recover unpaid wages. (Id.)

On June 9, 2023, Rakowsky (through his counsel) allegedly sent out communications to notify putative collective members of this lawsuit, directing them to a webpage on the "Nichols Kaster, Attorneys at Law" website with information about the lawsuit and an embedded link that allowed putative members to join. (ECF No. 14.) FedEx filed its Motion to Correct or Amend Plaintiff's Prenotice Communications to Putative Collective Members on June 29, 2023. (ECF No. 13.) It sought an order "requiring Plaintiff to cease distributing the June 9 notice, send corrected notices which prominently note the revisions, revise the consent form embedded in the webpage, and update the information on the webpage consistent with the Tennessee Rules of Professional Conduct and applicable law." (Id.)

On July 6, 2023, the parties met and resolved several of these issues. (ECF No. 23 at PageID 99.) "Specifically, Plaintiff agreed to slightly modify the June 9 advertisement letter to include 'the

Complaint alleges,' in the final sentence in the second paragraph and also add 'FedEx denies these allegations' to that same paragraph. Further, per FedEx's request, Plaintiff's Counsel agreed to provide the revised letter to the same individuals they sent the June 9th letter to." (ECF No. 23 (citing ECF No. 23-1) (citations omitted).) In a video hearing on August 3, 2023, before the undersigned, the parties also noted that one of the remaining issues — the website FAQ regarding the date on which the consent form would be filed with the court — had been resolved. (ECF No. 29 at 45:13.) FedEx maintains its complaints with five parts of the webpage.

## II. ANALYSIS

### A.   Legal Standards

An action for damages under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute provides, however, that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Accordingly, the procedures set forth in Federal Rule of Civil Procedure 23 for class actions, allowing "representative parties" to maintain or defend a suit on behalf of class members whose members have not affirmatively opted in, do not apply to an FLSA

-3-

claim. See Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA") (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 177–78 (1989) (Scalia, J., dissenting)). Instead, groups of employees may proceed jointly to bring an FLSA claim only as "party plaintiff[s]" who have affirmatively consented to the action. 29 U.S.C. § 216(b).

In Hoffmann-La Roche, the Supreme Court described the advantages of a collective action to both plaintiffs and the courts. 493 U.S. at 170. The Court addressed the issue in the context of an Age Discrimination in Employment Act ("ADEA") case, as the FLSA's collective action provision in 29 U.S.C. § 216(b) is directly incorporated in the ADEA. Id. at 169 (citing 29 U.S.C. § 626(b)). The Court explained that "[a] collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." Id. at 170. The Court also pointed out the benefits that accrue to the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Id.

The Court concluded that the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.

-4-

Accordingly, once a collective action is filed, a district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Id. at 170–71. A district court may exercise its discretion by conditionally certifying an action and sending such notice. Id. at 171–72. "'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action." Genesis Healthcare Corp., 569 U.S. at 75. Instead, "the sole consequence of conditional certification is the sending of court-approved written notice to employees[.]" Id. (citing Hoffmann–La Roche Inc., 493 U.S. at 171–72). Under the statutory scheme, the applicable statutes of limitations continue running until individuals affirmatively join the action by filing their written consent. 29 U.S.C. § 256 (providing that an FLSA collective or class action "shall be considered to be commenced in the case of any individual claimant — (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear — on the subsequent date on which such written consent is filed . . . .").

In Gilmore v. Aimbridge Hosp., LLC, this court specifically addressed pre-certification websites. No. 2:21-CV-2661-SHL-tmp,

2022 WL 3584672 (W.D. Tenn. Aug. 16, 2022). The plaintiff, a Chief Engineer with a hotel management company, filed an FLSA motion for conditional certification, alleging that he and other Chief Engineers had been misclassified under the FLSA and were not paid for overtime work. Id. at *1. The plaintiff published a website before being granted conditional certification, hoping to bring in additional members to his proposed collective. Id. at *3. The court recognized that

> an important function of conditional certification is to notify potential plaintiffs of a pending case and provide them an opportunity to join. The law does not change because Gilmore published a website designed to solicit Chief Engineers to participate in this suit.

Id. at *4. The court quoted other Sixth Circuit case law, noting that "pre-certification communications with putative members of a [§ 216(b)] collective action should be allowed unless [the] communication contradicts a court notice, is misleading or improper." Id. (quoting Struck v. PNC Bank N.A., No. 2:11-cv-00982, 2013 WL 571849 at *5 (S.D. Ohio Feb. 13, 2013)).

Further, the Tennessee Rules of Professional Conduct ("TRPC") apply to the parties and their attorneys:

> Attorneys appearing before this Court, either as members in good standing of the Tennessee bar, or by application and admission pro hac vice, agree to be bound by the Local Rules of this Court, the Tennessee Supreme Court Rules of Professional Conduct, and the Guidelines of Professional Courtesy and Conduct at Appendix C. See Tenn. West. L.R. 83.4(b) and (c).

Parchman v. SLM Corp., No. 2:15-CV-2819-JTF-CGC, 2018 WL 11416567, at *2 (W.D. Tenn. June 5, 2018), amended, No. 215CV02819JTFCGC, 2019 WL 13169736 (W.D. Tenn. Oct. 15, 2019). "[T]his Court has an independent interest and the inherent authority to enforce the rules of professional conduct." Banner v. City of Flint, 136 F. Supp. 2d 678, 684 (E.D. Mich. 2000), aff'd in part, rev'd in part, 99 F. App'x 29 (6th Cir. 2004). The TRPC requires that "[a] lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." Tenn. R. Prof. C. 7.1.

**B.   "Advertising Material"**

FedEx's first issue with the website is that it "fails to state that the information is 'Advertising Material'." (ECF No. 14 at PageID 55.) FedEx argues that this omission is misleading and in violation of the TRPC. (Id. at PageID 55–56.) Under TRPC Rule 7.3, targeted solicitations require that "[e]very written, recorded, or electronic solicitation by or on behalf of a lawyer seeking professional employment from anyone known to be in need of legal services in a particular matter shall include the words 'Advertising Material' . . . ." Tenn. R. Prof. C. 7.3(c). However, the first comment to the rule clarifies that, when the communication is "directed at the general public" through means

-7-

such as "a website[,]" the communication "typically does not constitute a solicitation . . . ." Tenn. R. Prof. C. 7.3, comment 1. The webpage in question is designed to be viewed by a specific audience — putative collective members — but it is accessible through a public, free-to-access website. Thus, the webpage is not a solicitation for purposes of the state professional conduct rules. Rakowsky need not include the language "Advertising Material" to maintain its webpage.

## C.    Indicating That Putative Collective Members Can Choose Separate Counsel

FedEx contends that the webpage is misleading because it gives "the false impression that [putative collective members] have no choice but to be represented by Plaintiff's counsel in this action." (ECF No. 14 at PageID 56.) Relatedly, FedEx also argues that the "FAQ" on the webpage titled, "How Do I Join This Case?" improperly states that, to join the lawsuit, the consent form needs to be returned to plaintiff's counsel's office and fails to mention that putative plaintiffs "may join through other counsel and/or file consent directly with the Court." (Id. at PageID 57.) Rakowsky responds that, because the website is not court-authorized notice, and court-authorized notice has yet to even be approved, it is not required to inform putative plaintiffs of their right to seek outside counsel. (ECF No. 23 at PageID 105.)

In its supplemental brief, FedEx cites a district court opinion in which the court was especially concerned about a pre-certification website that provided "no information informing putative opt-in collective members that they may contact counsel of their own choice, that they are not required to opt-in to this action, or that they may pursue their own action independent of the present litigation." (ECF No. 35 at PageID 196-97 (citing Jones v. Casey's Gen. Stores, 517 F. Supp. 2d 1080, 1088 (S.D. Iowa 2007).) Rakowsky argues that Jones is distinguishable because "there was a pattern of improper communications between plaintiffs and putative collective members that is absent here" and "unlike here, the Jones webpage contained a number of critical flaws . . . ." (ECF No. 36 at 211.) Rakowsky's contentions are inapposite. Although the facts are not identical, the same concerns present in Jones apply to the instant case. By not informing potential collective members about their right to seek separate counsel, the webpage creates the impression that the only possible way to pursue litigation in this matter is by completing its consent form and hiring Nichols Kaster to be their legal representative. Rakowsky further asserts on principle that the "law firm should not be required to inform the general public of their ability to hire non-Nichols Kaster attorneys." (ECF No. 23 at PageID 105.) But even in earlier versions of Nichols Kaster's own website, a "small footer" informed potential collective members in other matters

that "You should consult an attorney for advice regarding your individual situation." (ECF No. 33-2, <u>Morales</u> Order at PageID 180.)

Because the website is not itself court-authorized notice, it need not include the formalistic language typical of such notice. <u>See, e.g.</u>, <u>Bailey v. Youth Villages, Inc.</u>, No. 07-1089, 2008 WL 2987201, at *4 (W.D. Tenn. July 30, 2008) ("If you choose to join this lawsuit, you may, but are not required to, retain Gilbert Russell McWherter PLC to represent you."). However, the webpage must clarify that potential plaintiffs can seek alternative counsel and are not required to opt-in to the present suit. There is no need for any additional notice in the "How Do I Join This Case?" FAQ because, to a potential collective member, the initial notice will be sufficient to clarify that "This Case" refers only to Rakowsky's putative collective action and not any potential related suit.

## D.    FAQ Conflating Class and Collective Actions

FedEx raises issue with the plaintiff's FAQ titled, "Is This a Class Action? What Does that Mean?" (ECF No. 14 at PageID 57.) Specifically, FedEx points to the following description as being erroneous: "the idea behind both a class and collective action is the same: it allows one or more people to sue on behalf of themselves and other people who have similar claims." (<u>Id.</u>) Rakowsky responds that a recent Sixth Circuit opinion stands for the proposition that both class and collective actions can be

representative actions. (ECF No. 23 at PageID 105 (citing Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003, 1011 (6th Cir. 2023)).)

As FedEx correctly points out in its supplemental brief, the court in Clark goes to great lengths to differentiate class actions and collective actions, even specifically stating that, "unlike a Rule 23 class action, an FLSA collective action is not representative." Id. at 1009. While the undersigned recognizes that the current language choice is likely designed to simplify a complicated concept by analogy, such an analogy cannot mislead potential plaintiffs. Additional language must be included to correctly identify the differences between class and collective. The undersigned does not, however, adopt any suggested language provided by FedEx, which is unnecessarily formal. As long as Rakowsky can provide sufficient information to differentiate the two actions — particularly that a collective action is not a representative action and that the named plaintiff(s) are not suing on behalf of others in the collective — the webpage will not be misleading.

**E.    FAQ Regarding Potential Risk of Joining the Suit**

FedEx takes issue with the FAQ titled, "Do I Have to Pay Anything?" which states:

> You do not have to pay anything if you join the lawsuit. We are handling this case on a contingency fee basis. This means we will only be paid if the lawsuit is

> successful in obtaining relief either through a settlement, award, or a final judgment, and that payment will only come out of that settlement, award, or final judgment.

(ECF No. 14-2 at PageID 69.) Specifically, FedEx argues that this statement "misrepresents the potential risk of joining the lawsuit as it does not advise that the Court could assess costs should FedEx Express prevail." (ECF No. 14 at PageID 57.) To support its contention, FedEx cites the Bailey court's conclusion that "it is prudent to forewarn potential class members of costs they may be responsible for if the Defendant prevails." (Id. at PageID 57–58 (quoting Bailey, 2008 WL 2987201, at *3).) Rakowsky emphasizes the distinction between court-authorized notice and pre-notice communication before asserting that, even for court-authorized notice, courts worry that requiring language about the risk associated with joining the lawsuit could have a chilling effect on participation. (ECF No. 23 at PageID 106 (citing Avelar v. HC Concrete Constr. Grp., LLC, 2023 WL 1120882, at *4 (M.D. Tenn. Jan. 27, 2023) and Snider v. Quantum Health, Inc., 2021 WL 325886, at *5 (S.D. Ohio Feb. 1, 2021)).) The undersigned agrees.

A warning about potential costs associated with the litigation is unnecessary. Although members of the collective may potentially bear some costs should FedEx prevail, such language would have the effect of improperly dissuading potential plaintiffs from participating in the action. See, e.g., Snider,

-12-

2021 WL 325886, at *5 ("[T]he inclusion of such language is unnecessary and may improperly dissuade putative class members from opting-in to the lawsuit."); Kim v. Detroit Med. Informatics, LLC, No. 19-11185, 2019 WL 6307196, at *5 (E.D. Mich. Nov. 25, 2019) ("The Court also finds Defendant's proposed warning in the notice concerning potential fees unnecessary and, in fact, improper . . . [because] it may deter an employee from participating, and that adverse effect is disproportionate to the burden they may face by joining the action.") (internal quotation omitted). Thus, Rakowsky need not alter the webpage to reflect this proposed change.

### III. CONCLUSION

For the above reasons, FedEx's Motion to Correct or Amend Plaintiff's Prenotice Communications to Putative Collective Members is GRANTED in part and DENIED in part.

It is so ordered.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 2, 2023
Date

-13-