IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

ANDREW RAKOWSKY, Individually    )
and on behalf of all others      )
similarly situated,              )
                                 )
      Plaintiff,                 )
                                 )    No. 23-cv-02340-TLP-tmp
v.                               )
                                 )
FEDERAL EXPRESS CORPORATION,     )
                                 )
      Defendant.                 )

_____

ORDER GRANTING PLAINTIFF'S MOTION FOR DISTRIBUTION OF COURT-
AUTHORIZED NOTICE
_____

Before the court by order of reference from the presiding
district judge is plaintiff Andrew Rakowsky's Motion for
Distribution of Court-Authorized Notice. (ECF No. 39.) The motion
was held in abeyance to allow the parties to engage in discovery
relating to whether court-authorized notice should be approved,
pursuant to Clark v. A&L Homecare and Training Center, LLC, 68
F.4th 1003 (6th Cir. 2023). (ECF No. 58.) After completing this
discovery, defendant Federal Express Corporation ("FedEx") filed
its response in opposition, and Rakowsky filed a reply. (ECF Nos.
70, 81-82.) For the reasons below, the motion is GRANTED.[1]

_____

[1]The undersigned magistrate judge enters this order pursuant to 28
U.S.C. § 636(b)(1)(A). See Lescinksy v. Clark Cnty. Sch. Dist.,
539 F. Supp. 3d 1121, 1125-26 (D. Nev. 2021); Bradford v. Team
Pizza, Inc., No. 1:20-cv-00060, 2020 WL 5987840, at *1 (S.D. Ohio

## I. BACKGROUND

On May 26, 2023, Andrew Rakowsky filed this putative collective action alleging that FedEx violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by misclassifying its security specialists as exempt from overtime pay and failing to pay them the premium for their overtime hours worked. (ECF No. 1 at PageID 4-6, Compl. ¶¶ 24-36.) Rakowsky asserts this claim on his own behalf and on behalf of those similarly situated individuals "who are or have been employed by Defendant as a Security Specialist (II, III, or Senior), or in other job titles performing similar duties anywhere in the United States (except in Pennsylvania) during the applicable statutory period."[2] (Id. at PageID 2.) Rakowsky alleges that he and other security specialists routinely worked more than forty hours a week but were not paid the overtime premium. (Id. at PageID 6.) Rakowsky subsequently filed the present motion, requesting that the court authorize notice of this lawsuit to approximately 446 FedEx security specialists nationwide, as follows:

---

Oct. 9, 2020); Bearden v. AAA Auto Club South, Inc., 2:11-cv-03104-JTF-dkv, 2013 WL 1181474, at *1 n.2 (W.D. Tenn. Mar. 18, 2013); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 383-84 (E.D.N.Y. 2010).

[2]He also alleges that FedEx violated New York Labor Law, Article 19 §§ 650, *et seq.*, and the supporting New York State Department of Labor regulations, and seeks to bring these state law claims as a putative class action pursuant to Federal Rule of Civil Procedure 23. (ECF No. 1 at PageID 1, 7-8, 10-13.) These state law class action claims are not at issue in the present motion.

> All persons who worked for Defendant as a Security Specialist (II, III, or Senior), or other job titles performing similar duties anywhere in the United States (except in Pennsylvania) at any time since three years prior to the filing of this Complaint through the present.

(ECF No. 39-1 at PageID 256; ECF No. 39-3 at PageID 314 (Ex. 7); ECF No. 70 at PageID 511.) In support of his motion, Rakowsky filed his own sworn declaration, declarations from seven opt-in plaintiffs, FedEx's posted job descriptions for security specialists, and excerpts from his deposition testimony and from two opt-in plaintiffs.

FedEx is a Delaware Corporation with its principal place of business in Memphis, Tennessee. (ECF No. 12 at PageID 2, Ans. ¶ 14.) FedEx is an international organization offering shipping, transportation, e-commerce, and business services. (ECF No. 12 at PageID 2.) From 2015 to 2022, Rakowsky worked as a Security Specialist III and a Senior Security Specialist for FedEx in New York and Vermont. (Id.) Since at least May 26, 2020, all security specialists have been classified as exempt from overtime and paid a regular monthly salary regardless of the number of hours worked in any period. (ECF No. 72-4 at PageID 696, 698, Varcadipane Decl. ¶¶ 5, 12.) According to FedEx, all security specialists are classified as exempt "on the ground that they serve in a *bona fide* administrative capacity because their primary duty is the performance of office and non-manual work directly related to

- 3 -

FedEx's management and general business operations, and their primary duties have included the exercise of discretion and independent judgment." (ECF No. 72-4 at PageID 698.)

In his motion and reply, Rakowsky provides evidentiary support showing similarities between and among the security specialists he seeks to be noticed about this collective action lawsuit. He provides evidence that all security specialists share the same primary job duty: "providing loss-prevention and site monitoring services." (ECF No. 39-1 at PageID 259) (citing identical language contained in ¶ 6 of all eight of the opt-in plaintiffs' declarations.) Specifically, security specialists are expected "to prevent, analyze, respond to, and resolve any and all threats to the safety and security of the people, property, and facilities in the FedEx system." (ECF No. 39-3 at PageID 292, Ex. 4, FedEx job postings.) The work involves "observing and monitoring sorting operations and deliveries to help prevent employee theft or violence and maintain safety and security, investigating incidents of employee theft, violence, violations of safety and/or security rules, vandalism, pilfering, and other similar occurrences, and helping to train delivery drivers on FedEx's safety protocols." (ECF No. 39-1 at PageID 259) (citing ¶ 7 of all opt-in plaintiffs' declarations.) If a work-place incident occurs, security specialists are "tasked with conducting interviews and preparing incident reports," as well as "conducting various audits

including vehicle security audits and night audits." (Id. at PageID 260) (citing ¶ 8 of all opt-in plaintiffs' declarations.) All security specialists use FedEx's case management system, called eSIMS, to log their activities and investigations, update security files, and provide caseload status updates. (Id.) (citing ¶ 9 of all opt-in plaintiffs' declarations.) Security specialists are not responsible for supervising, hiring, or firing other employees. (Id.) (citing ¶ 17 of all opt-in plaintiffs' declarations.)

Rakowsky's and the opt-in plaintiffs' descriptions of their similar job duties are further supported by FedEx's own posted job descriptions. Security Specialist IIs "implement[] loss prevention programs and conduct[] investigations in theft, pilferage, workplace violence, and other acts detrimental to the FedEx brand, its customers, and its employees." (ECF No. 39-3 at PageID 287) (Security Specialist II Duties.) Security Specialist IIIs are responsible for "investigating, reporting, and advising on missing packages, pilferages, misconduct and other matters related to protecting the FedEx brand." (Id. at PageID 292) (Security Specialist III Duties.) Senior Security Specialists are responsible for "address[ing] product loss mitigation" and "physical security considerations," among other tasks. (Id. at PageID 296) (Senior Security Specialist Duties.) These job responsibilities are consistent across seniority levels, geographic territories, and under different supervisors. (ECF No.

39-1 at PageID 260) (citing ¶¶ 3-5 of all opt-in plaintiffs'
declarations); (ECF No. 39-3 at PageID 277-97) (job descriptions
showing generally consistent duties at locations in Washington,
D.C., Maryland, New Jersey, Pennsylvania[3] and Texas.) Because FedEx
pays all security specialists a fixed salary based on their exempt
classification, security specialists "do not have to keep track of
their actual hours worked[.]" (ECF No. 39-1 at PageID 260) (citing
¶¶ 10, 14, 15 of all opt-in plaintiffs' declarations.)

The court finds that the security specialists' declarations
submitted by the plaintiffs as well as by FedEx demonstrate that
they are required to perform substantially similar job duties,
even though how those duties are handled on a day-to-day basis and
the amount of time spent on those duties can vary among the
specialists. (ECF No. 39-4 at PageID 319) (Security Specialist III
and Senior Security Specialist in Mechanicville, New York, Andrew

---

[3]Security specialists in Pennsylvania are excluded from this
lawsuit due to a separate lawsuit filed on behalf of security
specialists in that state. See Fischer v. Fed. Express Corp., 509
F. Supp. 3d 275 (E.D. Pa. 2020), aff'd, 42 F.4th 366 (3d Cir.
2022). The Fischer court approved the distribution of notice but
concluded that it lacked general and specific personal
jurisdiction over out-of-state plaintiffs' claims. Fischer, 509 F.
Supp. 3d at 285-88. The court ruled that jurisdiction was limited
to security specialists who worked in Pennsylvania and that general
jurisdiction covering nationwide claims only exists if the
defendant "is incorporated in, or maintains its principal place of
business in, the forum state." Id. at 285. As a result, Rakowsky
filed this putative class and collective action against FedEx in
the Western District of Tennessee, the location of FedEx's
principal place of business.

Rakowsky Decl.) ("I observed and monitored sorting operations and deliveries to help prevent employee theft or violence and maintain safety and security. I was required to investigate incidents of employee theft, violence, violations of safety and/or security rules, vandalism, pilfering, and other similar occurrences. I also helped to train delivery drivers on FedEx's safety protocol."); (ECF No. 71-1 at PageID 539) (Security Specialist III and Senior Security Specialist in Oklahoma and northwest Arkansas, Scott Avery Decl.) ("I have spent about 60% of my time performing various types of investigations, working in eSIMS, writing reports, researching packages, reviewing video footage . . . [and] have spent the remaining 40% of my time doing awareness sessions, doing sort inspections, interacting with law enforcement, and interacting with Operations."); (ECF No. 71-2 at PageID 546-47) (Security Specialist II, Security Specialist III, and Senior Security Specialist in Arizona and New Mexico, Michael Barry Decl.) ("I have spent most of my time interviewing witnesses, writing reports and updating the eSims system. . . . I have provided advice and counselling to operations [personnel] and management. These are referred to as awareness sessions . . . ."); (ECF No. 71-4 at PageID 563-67) (Security Specialist III and Senior Security Specialist in Florida, Michael Dodd Decl.) (describing how his job is completed through conducting investigations into workplace violence and packages, "walking the various sort operations[,]"

and conducting job-related activities including updating the case files through eSIMS and interacting with security guards); (ECF No. 72-2 at PageID 674-77) (Security Specialist III and Senior Security Specialist in Cleveland, Ohio, Donald Scurlock Decl.) (describing that his job consists of investigations into workplace violence and packages, conducting security awareness sessions, and using the eSIMS system.)

These declarations also show that while security specialists' work schedules can vary, they often work more than forty hours per week and are required to be on-call 24 hours a day. (ECF No. 39-1 at PageID 260-61) (citing ¶¶ 11, 12 of all opt-in plaintiffs' declarations); (ECF No. 39-4 at PageID 323) (Senior Security Specialist in Nevada and Utah, Jeff Blanc Decl.) ("I regularly worked over forty (40) hours per week."); (ECF No. 71-4 at PageID 561) (Dodd Decl.) (working 40 hours per week, but "there are weeks that I work more than 40 hours and some weeks that I work fewer than 40 hours"); (ECF No. 72-1 at PageID 659) (Security Specialist III and Senior Security Specialist in Kentucky and Indiana, Brian Spriggs Decl.) ("I typically have worked approximately 40 hours per week. Sometimes I have worked fewer than 40 hours per week, and sometimes I have worked more."); (ECF No. 72-3 at PageID 682) (unspecified security specialist in Nevada and Utah, Neil Toliver Decl.) ("I typically have worked between 30 and 50 hours per week."); (ECF No. 71-2 at PageID 543) (Barry Decl.) ("[N]ormally

I have worked between 35 and 40 hours per week, sometimes up to 45.”); (ECF No. 39-4 at PageID 325) (Security Specialist III and Senior Security Specialist in Ohio, James Cracchiolo Decl.) (“I was required to be on-call 24 hours a day and was expected to respond immediately when anyone contacted me from assigned locations.”); (ECF No. 71-2 at PageID 544) (Barry Decl.) (“I am required to be available to take calls and receive messages on weekends and after hours, because of potential emergencies.”); (ECF No. 71-3 at PageID 553) (unspecified security specialist in Suffolk County, New York, James Cahill Decl.) (“I am required to be reachable after hours and on weekends. Though, when I have missed calls I have never been counseled or disciplined because of it.”); (ECF No. 71-4 at PageID 572) (Security Specialist II and Security Specialist III in Massachusetts, Mike Doyle Decl.) (“I have received work-related calls or messages after hours approximately 2 to 3 times a week. These calls are usually for general questions. When I receive after-hours calls, I have the discretion to determine whether they require an immediate response.”); (ECF No. 72-3 at PageID 684-85) (Toliver Decl.) (“As a Security Specialist, I have received work-related calls or messages after hours and on weekends[.]”).)

The similarities of the job duties among security specialists are further supported by Peter Varcadipane, FedEx’s Managing

Director of Security for the Southern Region, who explains in his declaration that

> [i]n furtherance of these duties, Specialists perform a variety of regular tasks, including but not limited to (1) investigating missing packages to prevent loss and theft (called Package Investigations); (2) investigating instances of alleged violations of FedEx's anti-workplace violence policies (Workplace Violence or WPV Investigations); (3) conducting surveillance of FedEx drivers to detect potential violations of FedEx policies concerning safety and security of packages while on the road (Vehicle Security Audits); (4) identifying topics on which FedEx operations personnel may require education, advice and training on security matters, and delivering such education, advice and training (Security Awareness Sessions); (5) observing FedEx operations to identify suspicious packages and activity; (6) performing analysis of data and operational trends to identify and address trends of potential theft, potential security vulnerabilities; (7) overseeing the operation of security equipment (such as cameras and alarms) at FedEx facilities; and (8) working and coordinating with contracted security service providers (such as guards) and local law enforcement.

(ECF No. 72-4 at PageID 697-98.)

In support of its argument against court-authorized notice, FedEx primarily relies on declarations from security specialists it obtained to illustrate that they work under minimal supervision and their duties involve exercising independent judgment and discretion. (ECF No. 70 at PageID 514-519.) In addition, FedEx relies on the declaration of Robert Crandall of Resolution Economics, its proposed expert, who opines that "performing similar duties is not the same thing as performing the same job." (ECF No. 74 at PageID 816.) In support of his opinions, Crandall

submits several charts to compare the duration and type of tasks performed by Rakowsky and the security specialists who submitted declarations. For example, he attaches one chart (Exhibit 4) comparing the "Average and Median Duration of Customer Shipment Loss Cases by Employee":



Based in part on these differences in duration and caseload among the security specialists, Crandall opines that they are not similarly situated. (Id. at PageID 820.)

## II. ANALYSIS

### A.   Legal Standard

The FLSA "mandates that employers pay a federal minimum wage and overtime to certain types of employees." Clark, 68 F.4th at 1007. A plaintiff who alleges violations of the FLSA can bring an action to recover unpaid wages "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §

216(b). Plaintiffs brought into these so called "collective" actions must "(1) 'actually be similarly situated' and (2) 'signal in writing their affirmative consent to participate in the action.'" Holder v. A&L Home Care and Training Ctr., LLC, 552 F. Supp. 3d 731, 738 (S.D. Ohio 2021), rev'd on other grounds, Clark, 68 F.4th 1003 (quoting Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006)). "Additional plaintiffs beyond named plaintiffs may be found by facilitated court notice, a process traditionally called 'conditional certification' despite the Sixth Circuit's recent rejection of the term." Rashad v. Mason's Pro. Cleaning Serv., LLC, No. 2:22-CV-02635-JTF-tmp, 2023 WL 5154534, at *2 (W.D. Tenn. Aug. 10, 2023) (citing Clark, 68 F.4th at 1009). "In Clark, the Sixth Circuit did away with previous methods that district courts had applied to determine whether facilitated notice was warranted, and instead embraced a new standard borrowed from the analysis used when determining whether a preliminary injunction is warranted." Id. Under Clark, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." 68 F.4th at 1011 (citing Memphis A. Philip Randolph Inst. v. Hargett, 2 F.4th 548, 554 (6th Cir. 2021)). "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." Id.

The Sixth Circuit also clarified that a court's facilitation of notice is not a "certification" — conditionally or otherwise — of the collective action. [Clark, 68 F.4th] at 1009. Instead, "other employees become parties to the FLSA suit (as opposed to mere recipients of notice) only after they opt in and the district court determines — not conditionally, but conclusively — that each of them is in fact 'similarly situated' to the original plaintiffs." Id. (citing 29 U.S.C. § 216(b)) (internal quotations omitted). In this way, Clark emphasized, but did not alter, the second step of the analysis. See Comer, 454 F.3d at 546–47 (describing the second stage as occurring after discovery has concluded and "examin[ing] more closely the question of whether particular members of the class are, in fact, similarly situated."). At the close of discovery, courts must determine whether the opt-in employees and plaintiffs are actually "similarly situated" for the case to proceed to trial as a collective action. Clark, 68 F.4th at 1008.

McClurg v. Dallas Jones Enters., Inc., No. 4:20-CV-201-RGJ, 2023 WL 8604177, at *3 (W.D. Ky. Dec. 12, 2023); see also Simpson v. Adena Health Sys., No. 2:23-cv-02633, 2024 WL 3418137, at *1-2 (S.D. Ohio July 15, 2024); Gomez v. D&M Bolanos Drywall, LLC, No. 2:23-cv-02334, 2024 WL 2806479, at *2 (W.D. Tenn. May 31, 2024); Garcia v. RickeyO Constr., LLC, No. 2:23-cv-02426, 2024 WL 1741349, at *2 (W.D. Tenn. Mar. 13, 2024).

"Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies — as to both timekeeping and compensation — as the original plaintiffs were." Clark, 68 F.4th at 1010 (citing Pierce v. Wyndham Resorts, Inc., 922 F.3d 741, 745-46 (6th Cir. 2019)). The Sixth

- 13 -

Circuit also considers "(1) the 'factual and employment settings of the individual[] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" Isaacs v. Landmark Recovery of Louisville, LLC, No. 3:23-CV-00210, 2023 WL 6096730, at *10 (M.D. Tenn. Sept. 18, 2023), motion to certify appeal denied, No. 3:23-CV-00210, 2023 WL 7101869 (M.D. Tenn. Oct. 27, 2023) (quoting Monroe v. FTS USA, LLC, 860 F.3d 389, 397 (6th Cir. 2017) and Pierce, 922 F.3d at 745). "Plaintiffs are similarly situated if they can demonstrate that they suffered from 'a single, FLSA-violating policy' instituted by the employer defendant, or if their 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" Id. (citing Monroe, 860 F.3d at 398).

**B.    Strong Likelihood of Being Similarly Situated**

Based on the numerous declarations and exhibits provided by both parties, the court finds that the plaintiffs have shown a strong likelihood that FedEx's security specialists are similarly situated to the plaintiffs themselves. The evidence demonstrates that security specialists perform the same duties and are subject to the same timekeeping and compensation policies. Security specialists conduct investigations relating to loss prevention,

theft, pilferage, and workplace violence, conduct security awareness sessions, use the eSIMS system to log their work, work overtime hours, and are on-call twenty-four hours a day.

FedEx argues that court-authorized notice should not be approved because security specialists fall within the administrative exemption to the FLSA. Section 541.200(a) of the regulations promulgated under the FLSA states in relevant part:

> The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> > (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week . . . , exclusive of board, lodging or other facilities;
> >
> > (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> >
> > (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (2024). Relying on several declarations and Crandall's expert report, FedEx claims that security specialists use sufficient discretion and independent judgment in performing their primary duties (as reflected by duration and caseload differences) that they are properly classified as exempt from overtime pay. (ECF No. 70 at PageID 525.) According to FedEx, not considering this exemption for purposes of notice "flies in the face" of Clark. (Id. at PageID 509.) FedEx argues that "defenses

- 15 -

(such as the administrative exemption) must be considered in evaluating a motion for notice." (Id. at PageID 522) (citing Clark, 68 F.4th at 1012.)

FedEx's argument is not supported by Clark. It is true that "[w]hether other employees are subject to *individualized* defenses — such as an employee's agreement to arbitrate a claim — can also affect whether particular employees are similarly situated for purposes of sending notice." Clark, 68 F.4th at 1010 (emphasis added). In this case, however, FedEx's administrative exemption argument applies across the board to all security specialists, which actually weighs in favor of a similarly situated finding. The court rejects FedEx's administrative exemption argument as a basis for denying court-authorized notice.

## C. Proposed Notice

Collective action court-authorized notice should be "timely, accurate, and informative." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). This ensures that those noticed can "make informed decisions about whether to participate." Hodges v. Pac. Bells, LLC, No. 2:17-cv-2564-SHL-dkv, 2018 WL 6574793, at *4 (W.D. Tenn. Sept. 30, 2018) (quoting Hoffmann-La Roche, 493 U.S. at 170.) Rakowsky's proposed notice parameters are as follows:

> (1) a 60-day notice period; (2) notice to be sent out via U.S. mail, email [(attached at ECF No. 39-3 at PageID 314-16),] and text message; and (3) a reminder notice via U.S. mail and email 21 days before the close of the notice period [(attached at ECF No. 39-3 at PageID 318)].

(ECF No. 39-1 at PageID 268.) The proposed text messages Rakowsky

intends to send

> contain links to a webpage that contains the notice, and
> a webpage that contains the consent form: "As a current
> or former Security Specialist with FedEx, you are
> eligible to join a collective action overtime case. To
> learn more, go to: https://bit.ly/[to be determined]. To
> submit a consent form to join the case, go to:
> https://bit.ly/[to be determined]. This message was
> approved by the District Court for the Western District
> of Tennessee."

(Id. at PageID 268–69) (brackets in original.) Rakowsky also

requests that the court "order FedEx to disclose the names and

contact information for all putative collective members within 7

days of the Court's Order to effectuate notice." (Id. at PageID

268.)

In its response, FedEx argues that distribution of notice is

unnecessary because "Plaintiff's counsel previously sent notices

to specialists across the United States, and several of these

specialists have opted in." (ECF No. 70 at PageID 526). This

argument is based on a pre-notice letter labeled "Advertising

Material" sent out by counsel for Rakowsky on June 9, 2023, to

several current and former security specialists. (ECF No. 14-1 at

PageID 63.) However, counsel's advertisements "do[] not

necessarily negate the need for court-authorized notice."

Calderon v. Geico Gen. Ins. Co., No. RWT 10CV1958, 2011 WL 98197,

at *8 (D. Md. Jan. 12, 2011).

FedEx next argues that Rakowsky's proposed notice should be amended because it "would have recipients consent to join *subsequent actions*. . . . Asking recipients to be bound to join cases that do not even exist yet crosses the line from providing notice of a lawsuit to encouraging participation." (ECF No. 70 at PageID 526–27) (emphasis in original) (citing Bolden v. U.S. Xpress Enter., Inc., No. 1:13-cv-245-CLC-SKL, 2014 WL 12962192, at *6 (E.D. Tenn. June 27, 2014.)). The court agrees with FedEx. Therefore, the statement regarding opt-in plaintiffs joining a subsequent lawsuit must be stricken from the proposed notice.

The parties also disagree about whether the appropriate statute of limitations should be two years or three. (ECF No. 70 at PageID 526; ECF No. 81 at PageID 899–900.) As one district court has explained:

> [T]he parties' debate concerning whether the FLSA statute of limitations should be two years or three years requires a merits-based determination that is inappropriate at this stage of the case. See, e.g., Weisgarber v. N. Am. Dental Grp., LLC, No. 4:18CV2860, 2020 WL 1322843, at *5 (N.D. Ohio Mar. 20, 2020) (determining that "Defendants' argument that the statute-of-limitations should be two years as opposed to three years requires a merit-based determination that should be made in the next stage of the certification process."); Kinder v. MAC Manufacturing Inc., 318 F. Supp. 3d 1041, 1048 (N.D. Ohio 2018) (explaining that "[b]ecause [the] [d]efendants' statute of limitations argument requires an evaluation on the merits of [the] [p]laintiff's claim, it is inappropriate for resolution at this early stage of litigation."). This is because whether Defendants' alleged violations of the FLSA were "willful" or not is a factual determination concerning whether Defendants "either knew its conduct violated the

- 18 -

> FLSA or showed reckless disregard about the matter."
> [Hempfling v. Cmty. Mercy Health Partners, No. 3:17-CV-
> 182, 2018 WL 5465870, at *7 (S.D. Ohio Oct. 29, 2018).]
> This Court thus rejects this argument while noting that
> Defendants retain the ability to raise it once more at
> a later stage in the litigation.

Hogan v. Cleveland Ave Rest., Inc., 690 F. Supp. 3d 759, 778 (S.D. Ohio 2023). The court need not determine at this stage of the litigation whether the two or three-year statute of limitations applies. For purposes of court-authorized notice only, the security specialists shall include those who would fall within the three-year statute of limitations.

FedEx also argues that notice should be conducted through a third-party administrator to protect privacy rights, because Rakowsky requests personal identifying information including contact information and the last four digits of social security numbers. (ECF No. 70 at PageID 527) (citing ECF No. 39-5.) FedEx cites two cases for this proposition. The first case, Davine v. Golub Corporation, does not include any discussion of third-party administrators. No. 14-30136-MGM, 2015 WL 1387922 (D. Mass. Mar. 25, 2015). The closest Davine comes to discussing parties responsible for the dissemination of notice is a comment that "the court defers decision on . . . an order requiring Defendants to assist in the dissemination of notices." Id. at *3. In the second case FedEx cites, McCoy v. RP, Inc., the parties were in agreement about using a third-party administrator. No. 2:14-CV-3171-PMD,

2015 WL 6157306, at *6 (D.S.C. Oct. 19, 2015) ("Defendants have agreed to use a third-party administrator[.] . . . Plaintiff has agreed to the use of a third-party administrator.").

In Rakowsky's reply, he cites several cases to support his argument that a third-party administrator is unnecessary, including Crosby v. Stage Stores, Inc., 348 F. Supp. 3d 742 (M.D. Tenn. 2018). (ECF No. 81 at PageID 900.) Rakowsky also states that he will forego his request for the employees' partial social security numbers. (Id. at PageID 900 n.9.) The court finds that use of a third-party administrator for notice purposes would be unnecessary. Therefore, Rakowsky is entitled to the remaining identifying information (minus the partial social security numbers) for those identified as putative collective members, and Rakowsky may send the notice to those individuals via email and U.S. mail. As to the request to use text messages as a third method of notice, although FedEx does not address this method in its response, the court will deny that request at this time, subject to reconsideration if plaintiffs can show that delivery by mail and email is insufficient as to any given potential opt-in plaintiff. See Simpson, 2024 WL 3418137, at *5 (citation omitted) ("[C]ourts are afforded broad discretion in determining how notice and consent forms are to be disseminated and returned.").[4]

---

[4]FedEx does not expressly oppose Rakowsky's request for a sixty-day notice period, that plaintiff be allowed to send a reminder

### III. CONCLUSION

For the above reasons, Rakowsky's Motion for Distribution of Court-Authorized Notice is GRANTED as follows: (1) Rakowsky shall make the required edits to the notice (ECF No. 39-3 at PageID 313-18) within seven (7) days of the date of this Order and provide a copy to FedEx; (2) FedEx shall provide to Rakowsky within seven (7) days of this Order a list with the following information for each FLSA collective member in an electronic, delimited, and importable format: (a) name, (b) last-known address, (c) last-known telephone number (for purposes of notice in the event mail and email are deemed insufficient as to a particular collective member), (d) last-known email address; (e) relevant job title(s), and (f) dates of employment for each relevant job title; and (3) within fourteen (14) days of receiving the list, the revised notice shall be sent by plaintiffs' counsel to those individuals by mail and email.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

September 30, 2024
Date

---

notice, and that FedEx be ordered to provide a list of all putative collective members and their contact information within seven days in electronic, delimited, and importable format.