**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ANDREW RAKOWSKY, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:23-cv-02340-TLP-tmp |
| v. | ) ) | |
| FEDERAL EXPRESS CORPORATION, | ) ) | |
| Defendant. | ) | |

## ORDER ON MOTION FOR EQUITABLE TOLLING

In May 2023, Plaintiff Andrew Rakowsky, individually and on behalf of others similarly situated, brought this collective action under the Fair Labor Standards Act ("FLSA") against Defendant Federal Express Corporation ("FedEx") to recover unpaid overtime wages. (*See* ECF No. 1.) The collective action consists of plaintiffs who worked as security specialists, or in a similar capacity, for FedEx.

Plaintiff moved for distribution of court-authorized notice in August 2023 (ECF No. 39), which the Court granted in September 2024 (ECF No. 84). And Plaintiff now moves to equitably toll the statute of limitations for opt-in plaintiffs who joined the class during the period of judicial notice. (ECF No. 121.) Defendant opposed the motion. (ECF No. 128.) For the reasons below, the Court **GRANTS** the motion for equitable tolling.

## <u>LEGAL STANDARD</u>

Equitable tolling is a doctrine that permits courts to toll the statute of limitations case-by-case to prevent inequity. *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). For

1

example, the doctrine may apply when a litigant fails to meet a deadline because of circumstances beyond the party's control. *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005). "Equitable tolling is an extraordinary remedy that is sparingly applied and concerns cases involving extraordinary circumstances." *Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017); *see Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016). In the FLSA context, judicial delays related to identifying which plaintiffs may join the collective action are often extraordinary circumstances that justify tolling the limitations period during the court-authorized notice window. *Gomez v. D&M Bolanos Drywall, LLC*, No. 2:23-cv-02334, 2024 WL 2806479, at *3 (W.D. Tenn. May 31, 2024) (collecting cases).

## <u>ANALYSIS</u>

Congress enacted the FLSA to eliminate certain "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a); *see also Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). In line with its remedial objectives, *see Keller*, 781 F.3d at 806, the FLSA permits employees to bring collective actions "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). But each plaintiff who wants to join an FLSA collective action must separately opt into the action before the statute of limitations runs. *See Kutzback*, 233 F. Supp. 3d at 628 (quoting 29 U.S.C. § 216); *see also* 29 U.S.C. § 255 (FLSA statute of limitations).

Sometimes, however, equitable tolling may preserve the claims of opt-in plaintiffs who filed their consent forms after the statute of limitations expires. *Kutzback*, 233 F. Supp. 3d 623, 628. And Plaintiff moves for equitable tolling here, arguing that, under *Clark v. A&L Homecare*

2

& *Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), the Court should toll the statute of limitations from the date of the Complaint until the end of the judicially-noticed opt-in period. (ECF No. 121 at PageID 1186.) Plaintiff suggests the delay alone may be enough to justify tolling but that the traditional tolling factors also favor him. (*Id.* at PageID 1189, 1193–97.) Defendant opposes the motion, rejecting the dicta in *Clark* and contending that the traditional tolling factors do not favor tolling for every opt-in plaintiff. (ECF No. 128 at PageID 1239–43.) The Court will first discuss *Clark* and related cases before addressing whether to toll based on the delay or the traditional tolling factors. For the reasons discussed below, both analyses favor Plaintiff.

## I.    Tolling under *Clark*

In *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), the Sixth Circuit adopted a new standard for determining whether opt-in plaintiffs are "similarly situated" to the named plaintiffs. *Clark*, 68 F.4th at 1011. In *Clark*, the plaintiffs were former home-health aides who claimed that A&L failed to pay overtime and properly reimburse vehicle expenses, resulting in wages below the federal- and state-law minimums. *Id*. at 1008. The plaintiffs asked the court to notify three groups of former employees about the lawsuit. *Id*. And under the usual two-step test, the court agreed to notify two of the groups. *Id*. But the court declined to send notice to employees who had left A&L more than two years earlier or who had signed valid arbitration agreements with the company. *Id*.

On appeal, the Sixth Circuit modified the "similarly situated" test and explained that, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id*. at 1011. This "standard requires a showing greater than the one necessary to create a genuine

issue of fact, but less than the one necessary to show a preponderance." *Id*. The Sixth Circuit then vacated and remanded.

The majority opinion in *Clark* did not address equitable tolling, but dicta from Judge Bush's concurrence and Judge White's partial concurrence and dissent is relevant to this motion. Both wrote separately to encourage tolling based on their concern that delays in issuing notice would prevent potential plaintiffs from learning about an action before the statute of limitations expired. For example, Judge Bush explained why "equitable tolling should be made available to plaintiffs in collective actions under the [FLSA]." *Id*. at 1012 (Bush, J., concurring). He reasoned that, like in class actions "[w]hen a class is certified, the class members' claims are deemed to relate back to the date of filing of the class action complaint," so too should collective action plaintiffs' claims relate back to the initial FLSA complaint. *Id*. at 1013 (Bush, J., concurring) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974)). Judge White agreed with this point, noting "that, given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs." *Id*. at 1017 (White, J., concurring in part and dissenting in part).

Echoing the concerns of Judges Bush and White, district court judges in the Sixth Circuit have discussed the relationship between delays in identifying which plaintiffs may be part of an action and tolling the FLSA statute of limitations during the opt-in period.[1] *See, e.g.*, *Rashad v.*

---

[1] Importantly, this trend existed before *Clark*, too. *See e.g.*, *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072 (S.D. Ohio 2019) (finding a 16-month delay between the motion's filing and the court's ruling was unreasonable and justified equitable tolling); *Hodges v. Pac. Bells, LLC*, No. 2:17-cv-02564-SHL-dkv, 2018 WL 6574793, at *5 (W.D. Tenn. Sept. 30, 2018) ("In collective wage and employment cases, courts regularly grant equitable tolling. . . . The logic of this is clear upon considering the fact that the defendant initially is the party in sole possession of the names and last known physical addresses of all potential opt-in Plaintiffs." (quoting *Penley v. NPC Int'l, Inc.*, 206 F.Supp.3d 1341, 1348 (W.D. Tenn. 2016))); *Van Buren v. Historic Images, Inc.*, No. 2:20-cv-02917-MSN-cgc, 2022 WL 1632659 (W.D. Tenn. May 23,

*Mason's Pro. Cleaning Serv., Ltd. Liab. Co.*, No. 2:22-cv-02635-JTF-tmp, 2023 WL 5154534, at

*4 (W.D. Tenn. Aug. 10, 2023) (acknowledging that "the *Clark* panel produced a concurrence

and partial dissent that both endorsed the idea that equitable tolling could apply to claims

potentially time-barred due to any discovery delay, and such a court-order delay may now often

take place before notice is ever issued").

Since *Clark*, some courts have acknowledged the likely delays and then applied the

traditional tolling factors.  *See Hyde v. Fricker's USA, LLC*, No. 1:22-cv-591, 2024 WL

4197903, at *3 (S.D. Ohio Sep. 16, 2024); *Gomez v. D&M Bolanos Drywall, LLC*, No. 2:23-cv-

02334, 2024 WL 2806479, at *3 (W.D. Tenn. May 31, 2024); *Cordell v. Sugar Creek Packing

Co.*, 691 F. Supp. 3d 838, 849–50 (S.D. Ohio 2023).  But others have granted tolling based on

the delay alone.  *See Clark*, 68 F.4th at 1015 (Bush, J., concurring) ("[I]n situations where court

delay has timebarred a sizeable number of potential plaintiffs, many courts find that the delay

alone warrants equitable tolling and decline to analyze the typical equitable tolling factors."

(citation omitted)); *Duncan v. Magna Seating of Am., Inc.*, No. 22-12700, 2024 WL 1049467

(E.D. Mich. Mar. 11, 2024) ("The Court declines to analyze the typical equitable tolling factors

and chooses to review its delay alone . . . ."); *Rice v. Walbridge Aldinger LLC*, Case No. 22-

11790, 2023 WL 8411537, at *4 (E.D. Mich. Aug. 11, 2023) ("Since the Court is declining to

analyze the typical equitable tolling factors and choosing to review its delay alone . . ." (footnote

and citation omitted)); *Sekala v. Just Mike's Jerky Co.*, No. 1:24 CV 1369, 2025 U.S. Dist.

LEXIS 104787, 2025 WL 1564272, at *11 (N.D. Ohio June 3, 2025) ("Because delay alone

---

2022); *see also Teran v. Lawn Enforcement, Inc.*, No. 2:22-cv-02338-JTF-tmp, 2023 WL
4962397, at *3 (W.D. Tenn. May 18, 2023) (tolling the limitations period for opt-in plaintiffs).
And given the heightened *Clark* standard and associated delays, the need for equitable tolling is
likely greater now.

warrants equitable tolling, the Court need not analyze the equitable tolling factors.").  Given

these two approaches, the Court will analyze whether to toll the limitations period under both.

## II.    Analysis

### A.    Delay

The type of delay which Judges Bush and White contemplated in *Clark* indisputably

exists here.  The Order Granting Plaintiff's Motion for Distribution of Court-Authorized Notice

expressly states that the "motion was held in abeyance to allow the parties to engage in

discovery" related to the *Clark* rule.  (ECF No. 84 at PageID 939; *see* ECF No. 58 (staying the

notice motion).)  And the filing timeline reflects the consequences of the delay: Plaintiff filed the

Complaint in May 2023 (ECF No. 1) and requested judicial notice about three months later (ECF

No. 39).  But the Court did not grant the motion until over a year later in September 2024.  (ECF

No. 84.)  The opt-in period then opened in October 2024 and lasted through December 13, 2024.

(*See* ECF No. 121 at PageID 1187; ECF No. 121-1 at PageID 1199.)

As the dicta in *Clark* and the persuasive authority before and after it predicted, attempts

to identify similarly situated plaintiffs delayed the notice period here.  And, consistent with the

FLSA's remedial purpose, the Court finds that the lengthy one-year delay justifies equitable

tolling.  *See Keller*, 781 F.3d at 806 ("Congress passed the FLSA with broad remedial intent."

(citing *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 509–11, 515 (1950))).

### B.    Traditional Tolling Factors

Rather than relying on the delay here, Defendant argues that the Court should apply the

traditional tolling factors.  (ECF No. 128 at PageID 1239.)  For tolling the statute of limitations,

courts consider five factors: "(1) lack of notice of the filing requirement; (2) lack of constructive

notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice

to the defendant; and, (5) the plaintiff's reasonableness [in] remaining ignorant of the particular

legal requirement." *Kutzback*, 233 F. Supp. 3d at 628 (citing *Townsend v. Social Sec. Admin.*, 486 F.3d 127, 132 (6th Cir. 2007)). But not every factor will apply to every case, and courts should decide the issue of equitable tolling case-by-case. *Id.*

### 1.    Actual Notice

Courts applying the first and second equitable tolling factors consider whether Plaintiff had actual or constructive notice of the pending litigation. *Id.* The absence of notice favors tolling because, without notice of the lawsuit, a plaintiff would not have been able to join it. Actual notice refers to awareness of a pending collective action, not merely awareness of the facts and circumstances underlying the FLSA claims. *Id.* at 629–30. This factor also may require knowing how to join the action—not just that it is pending. *Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1349 (W.D. Tenn. 2016) ("The website advises that a lawsuit has been filed, but effectively does nothing more. Thus, even if a potential opt-in Plaintiff were to go to the website, it does not serve as actual notice of the filing requirements.").

Similarly, "[c]onstructive knowledge is knowledge that one using reasonable care or diligence should have." *Kutzback*, 233 F. Supp. 3d at 630. But a court will not impute knowledge on a potential plaintiff simply because he or she knows facts about the underlying violations. *Penley*, 206 F. Supp. 3d at 1349–50 ("[I]mputing nuanced and personalized knowledge of the law in every case would lead to illogical results: every employee would be presumed to have constructive knowledge of the FLSA filing requirements each time her employer committed a wage violation, and this factor would always weigh against equitable tolling.").

Relatedly, the fifth tolling factor considers whether the opt-in plaintiffs "were reasonable in remaining ignorant of the filing requirement." *Penley*, 206 F. Supp. 3d at 1350. A person

who knows nothing about a lawsuit is likely reasonable in not knowing about the filing

requirement to properly join it.  And that reasonable ignorance favors tolling.  *See id.* ("The

Sixth Circuit has recognized that 'ignorance of a filing requirement may be reasonable under

certain circumstances to warrant equitable tolling.'" (citations omitted)).

Neither Party argues here that the average opt-in plaintiff would have had actual or

constructive notice of this lawsuit—or, consequently, of how to opt in as a plaintiff.  But

Plaintiff's counsel sent attorney advertising letters to some potential opt-in plaintiffs to alert

them to the pending action.  (*See* ECF No. 72-4 at PageID 701, 703–05.)  Some letters did not

inform recipients that they needed to file a consent form with the Court to join the case.  (*Id.* at

PageID 703.)  Instead, they told the recipients that "you may be eligible to join this case" and

invited them to "contact the case clerk" or "visit the case website" with "any questions and/or . . .

to discuss your potential claim."  (*Id.*; *see also* ECF No. 128 at PageID 1240–42.)  But other

letters told potential plaintiffs about the lawsuit and what to do to join: "If you are interested in

making a claim for unpaid overtime pay, please sign and return the enclosed Plaintiff Consent

Form.  Alternatively, you may electronically sign this form at [website url]."  (ECF No. 72-4 at

PageID 705.)

It thus appears that there are at least three categories of opt-in plaintiffs: those who

received no letter and had no notice of the suit, those who received notice of the action but

limited information about joining it, and those who knew about the lawsuit and how to opt in.

As to the first category of opt-in plaintiff, the lack of knowledge favors tolling.  And nothing

suggests this ignorance was unreasonable.  The same is true for the second category who would

not have known how to participate in the case and become a plaintiff, though their ignorance of

the filing requirement is more suspect.  *See Penley*, 206 F. Supp. 3d at 1349 (favoring tolling for

parties who did not receive notice of the filing requirements).  After all, they could have called or

emailed the contacts listed in the attorney advertisement letters.  (ECF No. 72-4 at PageID 703,

705.)  But tolling is less appropriate for the third category of opt-in plaintiff who learned about

the action and what to do if "interested in making a claim."  (*Id.*)

Defendant interprets these facts as reason to deny the motion or to wait to rule on this

issue until the Parties conduct discovery on "matters relevant to equitable tolling as to each opt-

in."  (ECF No. 128 at PageID 1242 (requesting "Plaintiff's counsel to disclose all such letters

and the dates sent" or for the Court to "allow discovery as to . . . the dates and times of receipt of

any notices about the case, how much they know about the case and when, what they did with

that information, whether they visited the website and reviewed the consent form, etc."); *see also*

*id.* at PageID 1241 ("Tolling should manifestly not apply (or should at least apply on a more

limited basis) to such a person who consciously and knowingly decided to delay opting in.").)

Indeed, at least one court has limited tolling for plaintiffs who learned about the pending

collective action through attorney advertising letters.  *See Thompson*, 2014 WL 884494, at *10

(same); *Kutzback*, 233 F. Supp. 3d at 631–32 (not tolling "the limitations period for potential

opt-in plaintiffs who received precertification mail communications from Plaintiffs' counsel"

because the recipients likely had notice of the lawsuit).

But the Court disagrees with Defendant for two reasons.  First, each tolling factor need

not weigh in a plaintiff's favor for the court to toll the limitations period.  And so, even if some

opt-in plaintiffs received the letters and knew about the action and how to join, the Court may

still find it equitable to toll the limitations period for them.[2]  Second, many courts do not conduct

---

[2] This Order on tolling has no effect on the current discovery order addressing representative
discovery.  (ECF No. 148.)

individualized analyses. *See, e.g.*, *Teran v. Lawn Enforcement, Inc.*, No. 2:22-cv-02338-JTF-tmp, 2023 WL 4962397, at *3 (W.D. Tenn. May 18, 2023) ("Here, while it is not clear whether the potential opt-ins have actual or constructive knowledge of the collective action, the named plaintiffs promptly filed for conditional certification, and the employer was aware of the scope of liability based on the Amended Complaint's language . . . .").[3]  This is especially true given the FLSA's remedial purpose. *See Keller*, 781 F.3d at 806.  With that in mind, the Court finds these factors favor tolling—even if only slightly.

## 2.    Diligence in Pursuing Rights

When ruling on equitable tolling, courts also consider a plaintiff's diligence in pursuing his or her rights.  The named Plaintiff here was diligent by filing a motion for distribution of judicial around three months after initiating the case. *See Hyde*, 2024 WL 4197903 at *6 (describing a three-month delay as diligent).  And during those three months, Plaintiff was participating in the litigation by defending motions, handling discovery matters, and moving for a protective order.  (ECF No. 121 at PageID 1196.)  Moreover, the opt-in plaintiffs were diligent in pursuing their rights by joining the action.  Of course, as noted, some opt-in plaintiffs may

---

[3] Cases that analyze delay alone, rather than the equitable tolling factors, take this idea a step further and specify that opt-in plaintiffs "have no bearing on" the tolling analysis. *Duncan v. Magna Seating of Am., Inc.*, No. 22-12700, 2024 WL 1049467 (E.D. Mich. Mar. 11, 2024) ("The Court declines to analyze the typical equitable tolling factors and chooses to review its delay alone, as the characteristics of the individuals who might later join this collective action will have no bearing on this analysis to toll the claims."); *Rice v. Walbridge Aldinger LLC*, Case No. 22-11790, 2023 WL 8411537, at *4 (E.D. Mich. Aug. 11, 2023) ("Since the Court is declining to analyze the typical equitable tolling factors and choosing to review its delay alone, the characteristics of the individuals who might later join this collective action will have no bearing on the analysis to toll the claims." (footnote and citation omitted)).  For this reason, the Court declines Defendant's suggested path to allow discovery about each opt-in plaintiff to see who received and read the attorney advertising letters and when. *Cf. Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261 (6th Cir. 2015) (not addressing arbitration waiver on a plaintiff-by-plaintiff basis in an FLSA collective action).

have waited to join the action after receiving attorney advertising letters, but the Court finds that individualized discovery is inappropriate.  And so, on balance, this factor supports tolling.

### 3.    Prejudice to Defendant

The last factor courts consider is prejudice to the defendant.  Generally, equitable tolling does not prejudice a defendant when the defendant has been put on notice of the potential scope of its liability.  *See Kutzback,* 233 F. Supp. 3d at 630–31 ("[A]wareness of the potential scope of liability is critical to the consideration of prejudice, as the purposes of a statute of limitations is 'to ensure fairness to defendants by notifying defendants of the claims they must defend.'" (citations omitted)).  And as Plaintiff notes, Defendant here was on notice of the lawsuit and its potential scope at least as early as May 2023, when Plaintiff filed the Complaint "on behalf of himself and all others similarly situated."[4]  (ECF No. 1 at PageID 1.)  *See Teran*, 2023 WL 4962397, at*3 ("[T]he employer was aware of the scope of liability based on the Amended Complaint's language that 'Plaintiffs bring this action, on behalf of themselves and all other similarly situated' employees."); *see also Kutzback*, 233 F. Supp. 3d at 631.  Defendant also does not argue that it would be subject to prejudice.  (*See* ECF No. 128.)  The Court thus finds this factor favors tolling.

## III.   Scope of Tolling

Having decided that tolling is appropriate, the Court now addresses the length of tolling. Defendant contends that any tolling should begin either when the Parties had fully briefed the

---

[4] In fact, Defendant may have had notice of these claims as early as 2019 when it began defending similar claims in *Fischer v. Fed. Express Corp.*, 5:19-cv-04924-JMG (E.D. Pa.).  (*See* ECF No. 121 at PageID 1186, 1197.)  The plaintiffs in *Fischer* were security specialists who tried to bring a nationwide collective action in Pennsylvania, but the court dismissed the out-of-state opt-in plaintiffs for lack of specific personal jurisdiction.  *Fischer v. Fed. Express Corp.*, 509 F. Supp. 3d 275, 284–91 (E.D. Pa. 2020).

motion for judicial notice to opt-in plaintiffs on February 13, 2024 (ECF No. 81), or when

Plaintiff moved for notice on August 31, 2023 (ECF No. 39).  (ECF No. 128 at PageID 1242–

43.)  Plaintiff requests tolling for all opt-in plaintiffs from the date the case was filed to the close

of the notice and opt-in period.  (ECF No. 121 at PageID 1198.)

Courts have taken each of these approaches.  *See, e.g.*, *Penley*, 206 F. Supp. 3d at 1351

(tolling from when the parties fully briefed the motion); *Thompson*, No. 3:12-cv-1093, 2014 WL

884494, at *10 (same); *Kutzback*, 233 F. Supp. 3d at 631–32 (tolling from when plaintiff moved

to certify class members); *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 848 (S.D. Ohio 2013)

(tolling from when plaintiff moved to notify potential opt-in plaintiffs); *Baden-Winterwood v.*

*Life Time Fitness*, 484 F. Supp. 2d 822, 829 (S.D. Ohio 2007) (same); *Gomez v. D&M Bolanos*

*Drywall, LLC*, No. 2:23-cv-02334, 2024 WL 2806479, at *5 (tolling from date of complaint); *see*

*also Clark*, 68 F.4th at 1013 (Bush, J., concurring) (noting that tolling should begin from date of

complaint).  But the purpose of tolling, "to the extent possible, is to put the Plaintiffs in the same

position in which they would have been had the delays not occurred."  *Penley*, 206 F. Supp. 3d at

1351.  And there has been no delay outside any plaintiff's control until the motion first becomes

ripe for the court's consideration.  The delays between the original Complaint in May 2023, the

motion for notice in August 2023, and the final briefing of that motion in February 2024 are part

of normal litigation and are not "extraordinary circumstances."  *Kutzback*, 233 F. Supp. 3d at

628.  The Court finds that the tolling should include February 13, 2024, through the end of the

notice period in which all opt-in plaintiffs should have joined the action, December 13, 2024.

## <u>CONCLUSION</u>

In conclusion, considering the *Clark* decision, the length of delay, and the application of the traditional equitable tolling factors, the Court **GRANTS** Plaintiff's motion for equitable tolling from February 13, 2024, through December 13, 2024.

**SO ORDERED**, this 17th day of July, 2025.

s/Thomas L. Parker

THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE